Lucas GRAHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 67A01–9901–CR–9.

Court of Appeals of Indiana.

June 18, 1999.

Transfer Denied Aug. 18, 1999.

William E. Daily, Danville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Lucas Graham ("Graham") appeals his convictions for Intimidation.[1] We affirm.

### Issue

Graham raises one issue on appeal which we restate as whether there was sufficient evidence to sustain his convictions.

### Facts/Procedural History

The facts most favorable to the judgment indicate that on September 8, 1998, Graham was in court for an initial hearing on a battery charge which had allegedly occurred the day before at Kevin Terry's ("Terry") mother's house. Terry, a witness to the alleged battery, was also in the courtroom during Graham's initial hearing in order to ask the judge what he should do with Graham's car and personal belongings which were still at Terry's mother's house.

---

1. Graham was charged pursuant to IND.CODE §§ 35–45–2–1(b)(1)(A) and 35–45–2–1(b)(1)(B)(iii).

After the Information was read, the trial court ordered Graham to refrain from having any contact with Terry or his family and bond was set. However, as Graham left the defense table and proceeded past Terry toward the witness bench, Graham whispered to Terry, "You're dead. I'm gonna get you." (R. 154–55, 162, 179).

Immediately following the conclusion of the hearings that day, Terry informed the judge and prosecutor of Graham's threat against him. A subsequent police investigation produced two additional people who had been present at the initial hearing and who had overheard Graham threaten Terry.

On September 9, 1998, Graham was charged with two counts of Intimidation, as class D felonies and one count of Invasion of Privacy, as a class D felony. Following a jury trial, Graham was convicted on the two Intimidation counts, but was found not guilty on the Invasion of Privacy count. This appeal ensued.

### Discussion and Decision

#### A. Standard of Review

■ The standard for reviewing the sufficiency of evidence is well settled. When addressing a sufficiency of the evidence claim, an appellate court neither reweighs the evidence nor judges the credibility of the witnesses. *Davenport v. State*, 689 N.E.2d 1226, 1230 (Ind.1997). Instead, we examine the evidence most favorable to the judgment, and all reasonable inferences to be drawn therefrom. *Id.* If, from this examination, there is evidence of probative value from which a rational trier of fact could infer guilt beyond a reasonable doubt, then we will affirm the conviction. *Id.* Additionally, "[c]onflicts between the testimony of defense and State witnesses is for final resolution by the trier of fact and not an appellate court, unless it may be said that the testimony of [the] State's witnesses was inherently improbable and runs counter to human experience." *Robey v. State*, 555 N.E.2d 145, 149 (Ind.1990) (quotations omitted).

A defendant commits Intimidation, a class D felony, when he threatens to commit a forcible felony against another person with the intent that the person be placed in fear of retaliation for a prior lawful act. IND.CODE § 35–45–2–1(b)(1)(A). A defendant also commits Intimidation, a class D felony, if he threatens a witness in a pending criminal proceeding against the defendant. IND.CODE § 35–45–2–1(b)(1)(B)(iii).

#### B. Argument and Analysis

Graham challenges his convictions for Intimidation claiming that the State failed to prove beyond a reasonable doubt each element of the charged offenses. Specifically, Graham claims the State failed to establish beyond a reasonable doubt that he (1) communicated a threat to Terry and (2) threatened Terry in order to place him in fear of retaliation for a prior lawful act. We disagree.

■ The State produced two witnesses, in addition to Terry, who testified that immediately following Graham's initial hearing for a battery charge to which Terry was an eye witness, they overheard Graham tell Terry "You're dead," and, "When I'm out of here, you're dead." (R.154–55, 162). Thus, there was sufficient evidence to support the jury's conclusion that Graham communicated a threat to Terry. Graham counters that he produced two additional witnesses who testified that they were also in the courtroom during the initial hearing, but that they did not hear or see Graham make any threats towards Terry. Graham's argument here is nothing more than an invitation to reweigh the evidence, and this we will not do. As stated previously, any conflicts in the witnesses' testimony at trial are for final resolution by the trier of fact. *See Robey*, 555 N.E.2d at 149.

Graham next asserts that the statement, "You're dead. I'm gonna get you," does not demonstrate that Graham was threatening Terry for any specific reason or act. (Appellant's brief at 8). In support of this contention, Graham directs our attention to *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind.Ct.App. 1997).

In *Casey*, Kimberly Williamson ("Kimberly") and several of her friends went to a local bar where they encountered Tommy Casey ("Casey") and Bryan Williamson ("Bryan"), the brother of Kimberly's estranged hus-

band, Ben Williamson ("Ben"). Casey and Bryan subsequently began fighting with one of Kimberly's friends inside the bar. Kimberly and her friends eventually returned to Kimberly's residence to watch television. Later that same evening, one of Kimberly's friends observed a person standing on a ledge outside a window on the second story of Kimberly's residence. As soon as Kimberly and her two friends stepped outside to investigate, they were confronted by Casey, Bryan, Ben, and a fourth unidentified person. Kimberly pleaded with Casey to leave, but he refused, stating, "Get inside bitch, you're next." Casey then asked one of his companions to retrieve his gun from his car, stating that he was going to kill all of them. Shortly thereafter, either Bryan or Ben handed Casey an aluminum baseball bat which he used to strike one of Kimberly's friends on the back of the head. Casey then turned to Kimberly and yelled again, "You're next, bitch." Kimberly's friend immediately pushed her inside her home and locked the door.

Casey was later charged and convicted of Battery and Intimidation. On appeal, this Court reversed Casey's Intimidation conviction. In so doing, we stated that mere proof that the victim is engaged in an act which is not illegal at the time the threat is made is not sufficient to prove Intimidation. *Casey*, 676 N.E.2d at 1072. We further stated that the State must establish that the legal act occurred prior to the threat and that the defendant intended to place the victim in fear of retaliation for that act. *Id.* Further, while the State subsequently alleged in its response to Casey's motion to correct error that Kimberly was engaged in the lawful acts of being a patron at a bar, being at her house and being a witness to Casey's attack on her friend, we found that the record did not support the State's contention that Casey was retaliating for any of those actions. *Id.* at 1073.

 In relying on *Casey*, Graham argues that the statement, "You're dead. I'm gonna kill you[,]" does not demonstrate Graham's reason for threatening Terry, nor does it indicate Graham was threatening Terry for

any specific act. We find these arguments unpersuasive.

Unlike the *Casey* case where there was no evidence from which the jury could reasonably infer that Casey had threatened Kimberly with the intent to place her in fear of retaliation for a prior lawful act, here the record supports the State's contention that Graham threatened to retaliate against Terry for Terry's prior and continuing legal act of participating as a witness against Graham with regard to the alleged battery. Terry witnessed the battery and was present at the initial hearing. Additionally, Graham threatened Terry while they were still in the courtroom, immediately after the hearing, as Graham returned to the witness bench. Based on these facts, we find there was sufficient evidence for the trier of fact to infer, beyond a reasonable doubt, that Graham threatened Terry with the intent of placing him in fear due to Terry's participation as an eyewitness in the court proceedings against Graham. Accordingly, we find no error.

Affirmed.

FRIEDLANDER, J., and STATON, J., concur.