

FILED

Apr 21 2016, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Victor Roar,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 21, 2016

Court of Appeals Case No.
49A02-1506-CR-506

Appeal from the Marion Superior
Court

The Honorable Barbara Cook
Crawford, Judge

Trial Court Cause No.
49F09-1404-FD-18644

**Najam, Judge.**

## Statement of the Case

[1] Victor Roar appeals his conviction for intimidation, as a Class A misdemeanor, following a bench trial. Roar presents two issues for our review:

1.    Whether the State presented sufficient evidence to show that he communicated a threat with the intent to place his victim in fear of retaliation for a prior lawful act; and

2.    Whether the trial court abused its discretion in the admission of certain evidence.

[2]    We hold that the State presented sufficient evidence from which a reasonable fact-finder could conclude that Roar had committed intimidation, and we are not persuaded by Roar's argument that the conditional language he used in the communication of his threat obviates the State's evidence of his intent to place his victim in fear of retaliation for a prior lawful act. We also hold that any error in the court's admission of the evidence challenged on appeal was harmless.

[3]    Affirmed.

## Facts and Procedural History

[4]    In 2014, Roar's sister, Ametrua, rented an apartment that was managed by Tracey Olive. On April 2, Roar was near Ametrua's apartment when he saw Olive serve an eviction notice on Ametrua. Roar knew that Ametrua had had problems paying her rent, and Roar had previously interacted with Olive. He considered Olive a "slumlord" and thought she had an "attitude." Tr. at 149-50. Roar saw Olive knock on Ametrua's back door, and, when there was no answer, he saw Olive roll up the eviction notice and place it in the door. Roar immediately removed the eviction notice from Ametrua's door. *Id.* at 149.

When Olive turned around to leave, she heard Roar yelling at her. As Olive later testified, Roar

> told me I was bein[g] unprofessional, and . . . that . . . I should . . . go about my job a different way . . . . [A]nd then he basically told me I was a bitch. And . . . I said I'm just dropping the notice of claim [sic]. I'm not . . . here to do anything else. And then he threatened me. . . .
>
> * * *
>
> He called me a bitch and then told me that if I came back on the property[] he'd kill me.

*Id.* at 24-25.

The State charged Roar with intimidation, as a Class D felony. After a bench trial, the court found Roar guilty as charged but reduced his conviction to a Class A misdemeanor. This appeal ensued.

# Discussion and Decision

## *Issue One: Sufficiency of the Evidence*

We first consider Roar's argument that the State failed to present sufficient evidence to show that he had committed intimidation of Olive. Our standard of review for sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the

[judgment]. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations and internal quotation marks omitted). To show that Roar committed intimidation, as a Class A misdemeanor, the State was required to show, first, that Roar "communicate[d] a threat" to Olive and, second, that he did so with the intent that Olive "be placed in fear of retaliation for a prior lawful act." Ind. Code § 35-45-2-1 (2013).

[8] A reasonable fact-finder could conclude that the State presented sufficient evidence to support its charge of intimidation. Again, the first question under the intimidation statute is whether Roar "communicate[d] a threat." I.C. § 35-45-2-1(a). Roar undoubtedly did this. He told Olive that, "if [she] came back on the property, he'd kill" her. Tr. at 25. Thus, the State demonstrated that Roar threatened Olive.

[9] The second, and independent, question under the statute is whether Roar's threat was made "with the intent . . . that [Olive] be placed in fear of retaliation for a prior lawful act." I.C. § 35-45-2-1(a)(2). The State demonstrated this as well. Roar knew who Olive was and knew of his sister's relationship to Olive, including his sister's failure to pay rent. Roar knew that Olive was serving an

eviction notice on his sister on April 2. And Roar's threat occurred immediately after he had observed Olive lawfully serve that eviction notice. The fact-finder was free to conclude, considering the substantial evidence, that Roar's threat was in direct response to Olive's lawful attempt to evict Roar's sister.

[10] Roar argues that, because he conditioned his threat to Olive on "if [she] came back on the property," any other evidence concerning whether he intended his threat to place Olive in fear of retaliation for a prior lawful act is irrelevant. In support of that analysis, Roar most notably cites *C.L. v. State*, 2 N.E.3d 798, 801 (Ind. Ct. App. 2014), *trans. not sought*, in which a majority panel of this court categorically declared that "conditional" threats cannot demonstrate an intent to place a victim in fear of retaliation for a prior lawful act. But we agree with the dissenting opinion in *C.L.* and conclude that the majority in that case did not correctly decide that question. *See id.* at 801-02 (Najam, J., dissenting). As such, we are also not persuaded by *Causey v. State*, 45 N.E.2d 1239 (Ind. Ct. App. 2015), *trans. not sought*, the only published opinion in Indiana to rely on the majority's reasoning in *C.L.*

[11] Under the reasoning of *C.L.* and *Causey*, no defendant can be convicted of intimidation if he has the presence of mind to explicitly use conditional language in the course of communicating his threat to another. But that is an unreasonable interpretation of our intimidation statute. Threats are, by definition, expressions of an intention to do a future thing, and, thus, to some degree, all threats are conditional. *See* I.C. § 35-45-2-1(d). And once the facts

demonstrate that the defendant communicated a threat, the only question left is whether the defendant did so "with the intent" to place the victim "in fear of retaliation for a prior lawful act." I.C. § 35-45-2-1(a)(2). Mere use of conditional language in the course of communicating a threat does not vitiate the statute's application when the factual predicate for the threat was a prior lawful act of the victim. Stated another way, the language a defendant uses in communicating a threat may be relevant to the fact-finder's assessment of the defendant's intent, but the language used is not the only relevant consideration.

[12] Roar also is mistaken in his reliance on *Casey v. State*, 676 N.E.2d 1069, 1072-73 (Ind. Ct. App. 1997), which is plainly inapposite. In *Casey*, the defendant threatened his victim when he told her "you're next," but the language of the threat was not the basis for our reversal of his conviction for intimidation. *Id.* at 1071. Rather, we reversed the defendant's conviction because "the State failed to allege or prove" the victim's "prior lawful acts which le[d] to the threats." *Id.* at 1072-73. And the defendant's threat itself did "not demonstrate his reasons for threatening [the victim] or indicate that he was doing so because of any specific prior act." *Id.* at 1073. Thus, in *Casey* we reversed the defendant's conviction not because of the language used in the threat but because there was no evidence whatsoever to demonstrate a connection between the threat and any prior lawful acts of the victim. Unlike *Casey*, here the State plainly alleged and demonstrated Olive's prior lawful acts that immediately preceded and culminated in Roar's threats.

[13] In its operation and effect, Roar's exclusive reliance on the conditional language he used in communicating his threat renders irrelevant all other evidence that demonstrated his clear intent to place Olive in fear of retaliation for her prior lawful act. In other words, Roar asks this court to reweigh the evidence on appeal by giving exclusive weight to the first seven words of his threat to Olive while simultaneously discrediting all other evidence. We will not reweigh the evidence on appeal. The trial court was capable of discerning whether intimidation occurred where, as here, there is a clear nexus between the prior lawful act and the threat. The evidence plainly demonstrated, first, that Roar communicated a threat to Olive and, second, that he did so with the intent to place her in fear of retaliation for a prior lawful act. Accordingly, we affirm Roar's conviction for intimidation, as a Class A misdemeanor.

### Issue Two: Admission of Evidence

[14] Roar also asserts that the trial court abused its discretion in the admission of certain evidence, namely, a phone call Ametrua made to Olive well after Roar had intimidated Olive. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). However, "[t]he improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). As explained in Issue One, Roar's conviction is supported by substantial independent evidence of his guilt, and we are satisfied that there is no

substantial likelihood that the challenged evidence contributed to Roar's conviction. Accordingly, any error in the admission of the challenged evidence was harmless.

[15] In sum, we affirm Roar's conviction for intimidation, as a Class A misdemeanor.

[16] Affirmed.

Riley, J., concurs.

May, J., dissents with separate opinion.

| | |
|---|---|
| Victor Roar, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 49A02-1506-CR-506 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**May, Judge, dissenting.**

I would reverse Roar's conviction, as the State did not prove Roar's intent to place Olive in fear of retaliation for a prior lawful act. Therefore, I must dissent.

To convict Roar of Class A misdemeanor intimidation, the State was required to prove Roar communicated a threat to Olive with the intent she "be placed in fear of retaliation for *a prior lawful act*." Ind. Code § 35-45-2-1 (emphasis added). Roar told Olive, "if [she] came back on the property, he'd kill [her]." (Tr. at 25.) That threat was aimed at the future conditional act of Olive

returning to the property, and was not in retaliation for Olive's *prior* act of delivering an eviction notice.

[19] In *Causey v. State*, 45 N.E.3d 1239 (Ind. Ct. App. 2015), police were called to Causey's residence. Causey told the officers they had no business at his house, then said "you won't take me alive" and slammed the door. *Id.* at 1240. Police called for backup, and while they waited Causey opened the door and yelled: "[G]et off my property. You don't belong on my property. If you come any closer I'll shoot." *Id.*

[20] Causey was convicted of Class D felony intimidation. We reversed, finding it "apparent" from the language of the intimidation statute that "the legislature intended to require the State to prove that the victim had engaged in *a prior act*, which was not contrary to law, and that the defendant intended to repay the victim for the prior lawful act." *Id.* at 1241 (quoting *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct. App. 1997)) (emphasis added). In *Casey*, the State alleged Casey committed intimidation when he told the victim, "You're next bitch." 676 N.E.2d at 1073. That statement did not indicate there was a prior lawful action that led to the threats, and there was no evidence the threats were made in retaliation for the victim's actions prior to the statement. The statement did not "demonstrate his reasons for threatening [the victim] or indicate that he was doing so because of any specific prior act." *Id.* We reached the same conclusion in *C.L. v. State*, 2 N.E.3d 798, 801 (Ind. Ct. App. 2014): "statements that are 'conditional and aimed at future, rather than past, conduct,' will not

support a finding that the defendant intended to place the victim in fear of retaliation for prior acts."

[21] I would not disregard the plain language of the statute or the holdings in our decisions addressing that question. The majority in this case would interpret the intimidation statute to allow a conviction even if a defendant used language that was "conditional and aimed at future, rather than past, conduct," *id*., but I do not believe our precedent permits that interpretation. Even if we are free to "interpret" the plain and explicit language of the intimidation statute, our Supreme Court has instructed us that penal statutes should be construed strictly against the State and ambiguities should be resolved in favor of the accused. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005). We assume the language in a statute was used intentionally and that every word should be given effect and meaning. *Id*.

[22] The intimidation statute requires proof of intent that a victim be placed in fear of retaliation for a prior lawful act, and the State did not prove that. I must therefore respectfully dissent.